## Hull *v.* Hull.

*Divorce—Review by appellate court.*

A proceeding in divorce is subjected in the appellate court to scrutiny from beginning to end. Particularly is this directed to the testimony, in order that the merit or demerit of the application may on the whole be determined.

*Divorce—Desertion—Evidence—Facts not inferences must be proved.*

It is not enough to allege a wilful and malicious desertion. The libellant must, in order to be entitled to a divorce, exhibit facts from which the court may legally infer the breach of obligation. He cannot withhold facts and prove the inference.

Desertion is an actual abandonment of mutual cohabitation with intent to desert.

A divorce will not be decreed where the evidence establishes a separation which is not wilful and malicious desertion.

Argued May 21, 1900. Appeal, No. 30, April T., 1900, by respondent, in suit of Easton Hull against Daisy Hull, from judgment of C. P. Crawford Co., May T., 1898, No. 56, granting divorce a. v. m. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by W. W. PORTER, J.

Libel in divorce. Before THOMAS, P. J.

It appears from the evidence that Easton C. Hull was married to Daisy Cooley, July 4, 1894, at Covington, Kentucky, by Judge Shine. The couple lived together about two years after their marriage, most of the time at his father's house at Morefield, Ohio. About the close of the second year they moved to New Morefield, Ohio, where they went to housekeeping in a house owned by Mrs. Cooley, the mother of Mrs. Hull. While living there the wife apparently was confined, but the evidence does not disclose whether or not a child was born or is now living.

The husband does not seem to have provided for his wife in any manner. She taught school for nine months the first year of their married life, driving two and one half miles or more to school. They seem to have separated while living in Mrs. Cooley's house, he going to Pennsylvania while she went to

Nashville, Tenn., sought and obtained employment, but came back to Morefield, Ohio, again in 1896, where she remained a short time and then returned to Nashville and her employment.

The court below entered a decree of divorce.   Respondent appealed.

*Error assigned* among others was (1) in entering decree of divorce from the bonds of matrimony.

*Otto Kohler*, with him *John L. Zimmerman*, for appellant.— Though the language of the statute were adopted verbatim, specific acts should be alleged and set forth in the complaint: Gordon v. Gordon, 48 Pa. 226 ; Jones v. Jones, 66 Pa. 494 ; Harris's Appeal, 2 W. N. C. 331 ; Miles v. Miles, 76 Pa. 357 ; May v. May, 62 Pa. 206.

*Thomas Roddy*, with him *John J. Henderson*, for appellee.— The Act of April 26, 1850, P. L. 590, provides that " it shall be lawful for the several courts to entertain jurisdiction of all cases of divorce from the bonds of matrimony for the causes of desertion as aforesaid, or adultery, notwithstanding the parties were at the time of the occurrence of said causes, domiciled in any other state ; provided that no such divorce shall be granted unless the applicant therefor shall be a citizen of this common-wealth, or shall have resided therein for the term of one year, as provided for by existing laws."

By this act the courts of this state were given jurisdiction of actions of divorce for desertion where the cause of action occurred in another state.

It was held, it is true, in Bishop v. Bishop, 30 Pa. 412, that this act did not apply to cases arising in foreign countries, but its effect as applying to the several states of the Union has never been questioned.

In the cases relied on by the appellant, Colvin v. Reed, 55 Pa. 375, and Reel v. Elder, 62 Pa. 308, the doctrine is supported that where the injured party and the wrongdoer leave the state of their common domicil, the courts of the state in which the injured party acquires a domicil have jurisdiction.

OPINION BY WILLIAM W. PORTER, J., July 26, 1900:

This application for divorce is apparently based on the two

grounds of cruelty and desertion. The first is ill pleaded and not proven. The second seems to be that upon which the decree is founded. The parties were married in Kentucky, July 4, 1894. They lived together for about two years in Morefield, Ohio. In July, 1896, the libellant left his wife in Morefield and went to Meadeville, Pennsylvania. She went later, in the same summer, to Nashville or Knoxville, Tennessee. The libellant says, in his exceedingly meager printed testimony: "I have neither seen nor heard anything of my wife since I left Morefield in July, 1896." He is asked: "Have you any knowledge of the cause of the separation of the parties; if so, state the same and how do you know it." His reply is: "Her refusal to come to Meadeville to live with me. I know it because she told me so." This is substantially the whole of his printed testimony, save the date and place of marriage; the denial of collusion in the proceeding; and a statement of the wife's reputed residence in Tennessee. The mother of the libellant testifies that she heard the wife declare that she would not leave her mother's home. The witness is asked: "Do you know of her refusal to go to Pennsylvania with her husband? A. "Well, I have heard her say she would not go to any place away from her people." The same witness adds, in a later part of her testimony, that she heard the respondent say that she would not live with her husband again.

A proceeding for divorce is subjected in the appellate court to scrutiny from beginning to end. Particularly is this directed to the testimony, in order that the merit or demerit of the application may on the whole be determined. It is a duty which the Supreme Court have held to be upon them. It is no less a duty upon this court: Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290. The libellant left his wife and came into Pennsylvania. There is some evidence of unkindly relation between the parties, upon which it is possible an inference might be founded that the husband did not intend to return to his wife or to take her with him. There is no direct evidence that any invitation was given to accompany him, or that he prepared a home for her in Pennsylvania. The respondent, after the departure of her husband, left Morefield and went into another state, where she attempted to support herself. There was indubitably a separation of the parties, but it has

been held, over and over again, that a separation is not a wilful and malicious desertion. Desertion is an actual abandonment of matrimonial cohabitation with intent to desert, wilfully and maliciously persisted in without cause for two years: Middleton v. Middleton, 187 Pa. 612; Ingersoll v. Ingersoll, 49 Pa. 249. It is not enough to allege a wilful and malicious desertion. The libellant must, in order to be entitled to a divorce, exhibit facts from which the court may legally infer the breach of obligation. "He cannot withhold the facts and prove the inference:" Bishop v. Bishop, 30 Pa. 412. There is nothing in the testimony furnished by the paper-books showing a wilful and malicious desertion of the husband by the wife. This defect in the proof erects an insurmountable barrier to the entry of a decree for the libellant. It is not necessary for us to project our investigation beyond it.

The decree of the court below is set aside and the costs are directed to be paid by the appellee.