## Smith *v.* Smith, Appellant.

*Divorce—Desertion—Justification — Cruel and barbarous treatment.*

Where the libelant by his continued abuse and ill treatment of the respondent compelled her to refrain from marital relations with him, and to eventually leave his house, he cannot afterwards secure a divorce on the ground that the respondent wilfully and maliciously deserted him.

Argued December 10, 1918. Appeal, No. 129, April T., 1918, by respondent, from decree of C. P. Allegheny County, April T., 1917, No. 1411, granting divorce in case of Charles S. Smith v. Clara D. Smith. Before OR-LADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and WILLIAMS, JJ. Reversed.

Libel for divorce. Before CARPENTER, J.

The case was referred to A. M. Simon, Esq., as master, who recommended that a divorce be refused. On exceptions to the master's report, the court sustained the exceptions and granted a divorce.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree granting divorce.

*Joseph Schutzman,* for appellant.

96, (1919).]     Arguments—Opinion of the Court.

*J. F. Calhoun,* of *Calhoun & Calhoun,* and with him *Samuel Milliken,* for appellee.

OPINION BY ORLADY, P. J., July 17, 1919:

The single question involved in this appeal was whether the respondent was justified under the law in leaving the home of and separating herself from her husband. This is a second venture in the divorce court by the libelant, he having filed a libel in 1914, in which he charged his wife with cruel and barbarous treatment, and in which a decree was refused him. The present libel was presented in 1917, in which the respondent is charged with having committed wilful and malicious desertion and absence from the habitation of her husband without a reasonable cause, of more than two years. After this case was at issue a master was appointed, a number of hearings had and a report made to the court, from which it appears that the parties were married February 7, 1906, when the libelant, then a widower with five children, of ages ranging from two to ten years, and the respondent, a widow with one child, then about six years of age. The libelant was a school teacher in one of the prominent schools of McKeesport, which position he still occupies.

The testimony of the respondent and her witnesses, if accepted as verity, clearly sustains her charge. The law of the case has been frequently stated that the degree of cruelty to justify desertion, is the same as that required in a suit for divorce on the ground of cruel and barbarous treatment. Nothing else will answer. Separation is not to be tolerated for light causes, and all causes are light which the law does not recognize as ground for the dissolution of the marriage bond: Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290. And the "reasonable cause" which justified a wife in the desertion and abandonment of her husband is defined by the statute itself, to be such cruel and barbarous treatment as endangers her life, or which offers such indignities to her

person as to render her condition intolerable and life burdensome. The evidence adduced in support of the wife's defense, if believed, presents sufficient ground for a divorce under our decisions, upon both causes on which she relies as a justification for leaving her husband's home and family: Krug v. Krug, 22 Pa. Superior Ct. 572; Oxley v. Oxley, 191 Pa. 474; Welfer v. Welfer, 54 Pa. Superior Ct. 215. While the finding of fact of a master in divorce does not have the same force as that of a referee in a civil case, or the decision of a court in a case tried without a jury, the court is bound to give the evidence careful consideration whether the master's report be in favor, or against the granting of the divorce, in order to ascertain whether it does in very truth establish the statutory ground for divorce, or in this case as a defense to that action. Naylor v. Naylor, 59 Pa. Superior Ct. 547. And, as we said in Howe v. Howe, 16 Pa. Superior Ct. 193, "Of whatever drudgery the court of original jurisdiction may relieve itself in this class of cases by appointing a master, neither it nor we can escape the burden of a careful consideration of all of the evidence, in order to ascertain whether it does, in very truth, establish the statutory grounds for a divorce." The opinion of the master is merely advisory to the court, which it may accept and act upon, or disregard in whole or in part according to its judgment as to the weight of the evidence or the conclusions of fact of the master. The duty of investigation and decision is imposed on the appellate court in a like degree. And while in this case the learned trial judge of the court below wrote an elaborate opinion disagreeing with the recommendation of the master, we examine the record solely in the light of the testimony adduced, and are not committed to the findings of fact and conclusions of law of the court below any more than he is to that of the master. The judge disposing of the case did not have the witnesses before him, and was obliged to arrive at his conclusion by an examination of the record. The testimony adduced by the respondent

96, (1919).]　　　　　Opinion of the Court.

and a number of her witnesses clearly establishes a number of facts which ordinarily are considered such indignities to a wife as to render her condition intolerable and her life burdensome.　Assuming that her testimony, as to a number of items may be given in the language of exaggeration, it is to be expected, that if the substance of her story be true, she would be highly indignant and resentful against the man who for years had practiced such disrespect for the marital relations.　In the main, she is corroborated by her husband's own words, and it must be kept in mind that she is not suing him for a divorce, —he is seeking for a divorce on the ground of desertion, and nothing else.　While she testifies specifically that he struck her with his closed fist a number of times,—he admits striking her in the face with his open hand on three different occasions; he admits that she complained to him of the occurrences between their minor children which would naturally induce grief and indignation on a mother's part; he admits that their relation as husband and wife were but little less exaggerated than she declares them to have been; he admits that for years he kept a private diary of things she said, in anticipation of a suit for a divorce; he admits imputing marital infidelity on her part without supporting the charge by proof of a single act or witness.　Her physical condition was charged by him to improprieties and irregular life, without the slightest evidence to sustain such charges.　The master found as conclusions of law, that the conduct and treatment of the libelant amounted to both cruel and barbarous treatment, and indignities to her person which rendered her condition intolerable and life burdensome, and justified her withdrawal from his house and family, and recommended that a divorce be refused.

In consideration of the record the court below states: "It is not necessary to review or to comment upon the testimony in detail.　That the libelant sometimes permitted his temper, rather than his judgment to control his actions, is evident; that he was not free from faults in re-

spect to his duties as a husband is apparent." It is quite as apparent from reading the opinion of the learned judge of the court below that he was largely influenced by the professional standing of the libelant. He states: "Mr. Smith has been engaged in educational work for many years in McKeesport; his domestic troubles have been aired in court, and to that extent have been known to his friends and his enemies and the general public. It is fair to assume that the school authorities were not ignorant of the charges made by the wife against her husband, and the fact that they have not taken adverse action, but have continued, year after year, to elect him principal, is a persuasive evidence that they were not convinced of the truth of the charges against him, which if even partially sustained would have justified summary dismissal, and in any event would have resulted in refusal to elect him." The court further says: "The action or nonaction of the directors does not disprove the charges, but it is inconceivable that any board of directors having information or common rumor as a basis on which to proceed, would silently ignore such grave charges—charges which if even partially true, made libelant's continued employment as principal of the school impossible."

We have nothing to do with the reasons moving the board of school directors of McKeesport to continue Professor Smith as a teacher. They did not testify before the master, and their action is not in any way relevant in disposing of the wife's defense in this case. Measured by the ordinary rules to determine the credibility of witnesses, this libelant in admitting many of the grave charges offered by the respondent as a defense to her leaving his home, destroys the weight to be given his averment that "during their marital life he hath in all respects demeaned himself as a kind and affectionate husband," and is not a sufficient answer to the specific facts developed in the testimony on the part of the wife. The master, before whom both appeared and were examined in detail as to the separate contentions, says of the wife,

"Her story was in the opinion of the master a straight-forward recital of an apparently much-abused woman, credible and carrying with it the impress of truth. There is nothing in the manner or testimony of the respondent, or her appearance, or general action from which the master could fairly infer that she was not telling the truth. Both parties appeared to be persons of evident refinement and education. And when we consider that respondent's story is corroborated by the libelant himself, it will not do to dismiss her testimony upon the theory that it is false. The master has very carefully examined all the testimony for libelant in rebuttal, and finds nothing in the testimony of witnesses outside that of his own children, which could be fairly said to corroborate him."

The court further states: "Absence of evidence of any action by the school authorities coupled with the admitted facts that for years Professor Smith has been chosen as the head of one of the schools, of the city cannot be ignored, it is a fact of which notice must be taken when the question of character is before the court as a determining factor." His relation to the school board is entirely outside the record and should be ignored. It has nothing to do "as a determining factor" unless it is brought regularly on the record. The findings of fact by the referee are all sustained by the testimony adduced, and his conclusions of law logically follow. The admitted acts of vulgarity, offensive epithets, and personal violence shown by the testimony, as it was offered in support of the wife's justification for leaving her husband, were sufficient to make out an absolute defense. The relation of the parties to the outside world is not at all material, and should have no weight in determining questions that are to be disposed of under the strict legal rules. Exceptions to the master's findings of fact and conclusions of law were sustained by the court below, and a decree of divorce entered.

After a careful examination of the whole record, we conclude that the respondent was justified under the law

in leaving her husband's home and family, and that the divorce should be refused. The exceptions to the master's report are overruled, the decree is reversed, and all costs to be paid by the appellee.